# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| CYNTHIA A. BENNETT and GUY E. MILLER, | ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | No. 04-cv-11651-MLW |
| FIDELITY MANAGEMENT & RESEARCH COMPANY, et al., | ) ) ) | |
| Defendants. | ) ) ) | |
| NANCY HAUGEN, MICHAEL F. MAGNAN, KAREN L. MAGNAN, ROSE M. IANNACCONE, PRESLEY C. PHILLIPS, ANDREA M. PHILLIPS, and CINDY SCHURGIN, for the use and benefit of FIDELITY MAGELLAN and FIDELITY CONTRAFUND, | ) ) ) ) ) ) ) ) | |
| | ) | No. 04-cv-11756-MLW |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| FIDELITY MANAGEMENT & RESEARCH COMPANY and FMR CO., INC., | ) ) ) | |
| Defendants. | ) ) | |

## THE *HAUGEN* PLAINTIFFS' MEMORANUM OF LAW IN OPPOSITION TO *GILLIAM* PLAINTIFFS' MOTION TO INTERVENE AND TO STAY ALL PROCEEDINGS

# TABLE OF CONTENTS

I.  INTRODUCTION...........................................................................................................1

II.  FACTUAL OVERVIEW AND PROCEDURAL HISTORY ........................................1

    A.  The *Haugen* Action. ........................................................................................1

    B.  The Class Actions..............................................................................................3

III.  ARGUMENT ...............................................................................................................7

    A.  The *Gilliam* Plaintiffs Do Not Meet The Requirements For
Intervention As Of Right.................................................................................7

        1.  Because The *Haugen* Plaintiffs' Claims Are Completely
Distinct Legally As Well As Factually From *Gilliam*
Plaintiffs Claims, *Gilliam* Plaintiffs Cannot Meet The
Requirements For Intervention As Of Right..........................................7

        2.  The *Gilliam* Plaintiffs Have Made No Showing that the
*Haugen* Plaintiffs Will Inadequately Protect *Gilliam*
Plaintiffs' Interests................................................................................11

    B.  The *Gilliam* Plaintiffs Also Fail To Meet The Requirements
For Permissive Intervention As The Claims In The Cases Do
*Not* Involve Common Issues Of Law Or Fact And Intervention
Would Unduly Delay Or Prejudice The Adjudication Of The
Rights Of The *Haugen* And *Bennett* Plaintiffs. ..................................13

    C.  The Court Should Reject The *Gilliam* Plaintiffs' Motion For A
Stay As Yet Another Attempt To Delay and Take Control Over
the *Haugen* Action. ........................................................................................15

IV.  CONCLUSION ...........................................................................................................17

# TABLE OF AUTHORITIES

**Federal Cases**

*Ainswoth Aristocrat Int'l Pty. Ltd. v. Tourism Co. of P.R.*, 818 F.2d 1034
(1st Cir. 1987)...................................................................................... 15

*Baggesen v. American Skandia Life Assurance Corp.*, 235 F. Supp. 2d 30
(D. Mass. 2002) ................................................................................... 17

*Goldhammer v. Dunkin' Donuts*, 59 F. Supp. 2d 248 (D. Mass. 1999).................. 17

*Hertz Corp. v. Gator Corp.*, 250 F. Supp. 2d 421 (D.N.J. 2003) ................................. 17

*In re Thompson*, 965 F.2d 1136 (1st Cir. 1992) ........................................... 13

*Int'l Paper Co. v. The Inhabitants of the Town of Jay, Me.*, 887 F.2d 338
(1st Cir. 1989)...................................................................................... 10

*M.A.S. Realty Corp. v. Travelers Casualty & Surety Co.*, 196 F. Supp. 2d 41
(D. Mass. 2002) ................................................................................... 17

*Martel v. County of Los Angeles*, 56 F.3d 993 (9th Cir. 1995) (en banc).................... 17

*Martinez Rodriguez v. Jiminez*, 537 F.2d 1 (1st Cir. 1976)........................................ 15

*Morgan*, 726 F.2d 11 (1st Cir. 1984) .......................................................... 12

*Oneida Indian Nation of Wis. v. N.Y.*, 102 F.R.D. 445 (N.D.N.Y.1983).................... 11

*Pub. Serv. Co. of N.H. v. Patch*, 136 F.3d 197 (1st Cir. 1998)................................. 7, 11

*Ruthardt v. United States*, 303 F.3d 375 (1st Cir. 2002) ...................................... 12

*SEC v. Everest Mgmt. Corp.*, 475 F.2d 1236 (2d Cir. 1972) ................................. 14

*Smoot v. Mobil Oil Corp.*, 722 F. Supp. 849 (D. Mass. 1989) ...................................... 12

*Stadin v. Union Elec. Co.*, 309 F.2d 912 (8th Cir. 1962)..................................... 14

*Travelers Indemnity Co. v. Dingwell*, 884 F.2d 629 (1st Cir.1989) ............................. 7, 9

*Veryfine Prods., Inc. v. Phlo Corp.*, 124 F. Supp. 2d 16 (D. Mass. 2000) ............... 16, 17

*Wash. Elec. Coop., Inc. v. Mass. Mun. Wholesale Elec. Co.*, 922 F.2d 92
(2d Cir. 1990)..................................................................................... 10, 11

# I. INTRODUCTION

Plaintiffs Nancy Haugen, Michael F. Magnan, Karen L. Magnan, Rose M. Iannaccone, Presley C. Phillips, Andrea M. Phillips, and Cindy Schurgin (the "*Haugen* Plaintiffs") oppose the *Gilliam* Plaintiffs' Motion to Intervene and to Stay all Proceedings, as *Gilliam* Plaintiffs' do not meet the requirements for either intervention or a stay. The *Gilliam* Plaintiffs' motion to intervene and to stay all proceedings in the *Haugen* Action (04-cv-11756 MLW) and the related *Bennett* Action (04-cv-11651 MLW) should be denied, because the claims asserted by *Haugen* Plaintiffs and the *Bennett* Plaintiffs are legally and factually distinct from the claims asserted by *Gilliam* Plaintiffs and because *Gilliam* Plaintiffs have made absolutely no demonstration that their interests are being inadequately protected in this action. Rather, the *Gilliam* Plaintiffs seem to be concerned that the *Haugen* Plaintiffs are being too aggressive in pursuing their claims, which clearly is in the interest of *Gilliam* Plaintiffs, but not in the interests of their counsel, who are separately seeking to gain control over the *Haugen* Action and the *Bennett* Action. [1]

# II. FACTUAL OVERVIEW AND PROCEDURAL HISTORY

**A.     The *Haugen* Action.**

The *Haugen* Plaintiffs filed this action on May 5, 2004 in the United States District Court for the District of Arizona. By Order dated July 16, 2004, the *Haugen* Action was transferred to this Court.

The *Haugen* Action is a shareholder action brought by Plaintiffs pursuant to § 36(b) of the ICA, on behalf of two open-end registered investment companies, or mutual funds, created,

---

[1] The *Gilliam* Plaintiffs' Motion to Intervene raises similar arguments as used in their September 1, 2004 Motion for Consolidation and Motion for Appointment of Tri-Lead and Liaison Counsel. Accordingly, *Haugen* Plaintiffs incorporate herein their (1) Memorandum of Law in Opposition to Motions for Appointment of Tri-Lead Counsel and for Consolidation (*Haugen* Docket No. 34) and (2) [Proposed] Sur-Reply in Opposition to Motions for Consolidation and Appointment of Tri-Lead and Liaison Counsel (*Haugen* Docket No. 50), which extensively explain the substantive and procedural differences between their lawsuit and the Class Action lawsuits brought by *Gilliam* Plaintiffs.

sold, advised and managed by the Fidelity entities. *Haugen* Complaint, ¶¶ 1, 33-39. Those mutual funds are: the Fidelity Magellan Fund and the Fidelity Contrafund (collectively, the "Funds"). *Haugen* Complaint, ¶ 1. Together the funds have assets under management in excess of $103 billion. *Id.*

In their lawsuit, the *Haugen* Plaintiffs seek to recover, on behalf of the Funds, advisory fees charged by the Defendants and to recover the excess profits resulting from economies of scale wrongfully retained by Defendants in breach of their fiduciary duties to the Funds under the ICA. *Haugen* Complaint, ¶ 12. As summarized below, and alleged in great detail in the *Haugen* Complaint, the claims in the *Haugen* Action are specifically tailored to advance advisory fee claims pursuant to Section 36(b) of the ICA.

Defendants receive fees paid by Plaintiffs and other shareholders of the Funds for providing (a) pure investment advisory services and (b) administrative services. These fees are based on a percentage of the net assets of each of the Funds. *Haugen* Complaint, ¶ 5. While over the years the Funds have grown dramatically in size, the nature of the services rendered by Defendants has changed little, if at all. Indeed, advances in computing and communication technologies in the past twenty years have resulted in exponential efficiencies that have dramatically reduced the costs of servicing mutual funds. As a result, the *Haugen* Plaintiffs allege the advisory fees paid to Defendants (and accepted by them in violation of their statutory fiduciary duties) are disproportionately large in relationship to the services rendered to Plaintiffs. *Haugen* Complaint, ¶¶ 22-23.

In addition, the *Haugen* Plaintiffs allege that Defendants, in violation of their fiduciary duties to Plaintiffs, have retained excess profits resulting from economies of scale. These economies of scale are a product of the dramatic growth in assets managed by Defendants, caused mainly by their ability to provide the identical investment advisory services they provide

Plaintiffs to other clients at little or no additional cost. The excess profits resulting from these economies of scale belong to Plaintiffs and the other shareholders of the funds. *Haugen* Complaint, ¶¶ 7, 68-69.

Plaintiffs allege that the fees charged by Defendants for investment advisory services are excessive in light of the nature and quality of services provided to the Funds, the profitability of the Funds to the Defendants, economies of scale, comparative fee structures, and the fallout benefits generated. *Haugen* Complaint, ¶¶ 45-95. Indeed, the pure investment advisory services that Defendants provide to the Funds are identical to the investment advisory services Defendants or its affiliates provide to other clients, and entail essentially identical costs. Despite the equivalence of the investment advisory services Defendants provide to the Funds and its other clients, the fees in dollar amounts that Defendants receive from the Funds that are attributable to pure investment advisory services are much higher than the fees Defendants or their affiliates receive from other clients for the identical services. *Haugen* Complaint, ¶¶ 10-11, 71.

On October 7, 2004, Defendants answered the *Haugen* Complaint (*Haugen* Docket No. 35), and the *Haugen* Plaintiffs are prepared to proceed with initial disclosures and discovery.

**B.      The Class Actions.**

The first of the class actions – the *Gilliam* Action (04-cv-11600 NG) – was filed two months after the *Haugen* Action on July 19, 2004. The four other class actions – *Bogatin Family Trust* (04-cv-11642 NG), *Awali* (04-11709 MLW), *Groeschel* (04-cv-11735 GAO) and *Fallert* (04-11812 MLW) (collectively, the "Class Actions"), mirror the allegations of the *Gilliam* Action.

In contrast to the focused allegations in the *Haugen* Action, the Class Actions present a hodge-podge of both class claims and derivative claims against Fidelity entities, and various

3

individuals, who were trustees charged with overseeing the Fidelity Fund Complex, making only vague allegations of excessive fees as an afterthought.

At the heart of the Class Action Complaints are allegations that Fidelity drew upon the assets of the Fidelity funds to pay brokers aggressively to push Fidelity funds over other funds, in order to maximize Fidelity's fees, and that Fidelity concealed such payments from investors by disguising them as brokerage commissions. *Gilliam* Complaint, ¶¶2-4.

To the extent that there is any overlap between the *Gilliam* Complaint and the *Haugen* Complaint it is because the Class Action Plaintiffs and their Counsel ("Class Action Counsel") copied the allegations from the *Haugen* Complaint and the related *Bennett* Complaint. Indeed, much of the discussion in the *Gilliam* Complaint about Fidelity's excessive management fees, failure to pass on economies of scale and failure to offer breakpoints – which are at the heart of the *Haugen* Complaint and the related *Bennett* Complaint – are lifted, in some instances *verbatim,* from the *Haugen* Complaint and the related *Bennett* Complaint. *Compare Gilliam* Complaint, ¶¶63, 68, 69(a)-(e), 70, 71, 74 with *Bennett* Complaint, ¶¶15, 16, 17, 18, 19, 22(a)-(e), 32, 65 and *Haugen* Complaint, 15, 16, 17, 18, 19, 31, 67.

The Class Actions allege a complex scheme of fraudulent conduct, seek class certification, and demand a jury trial. The Class Plaintiffs assert the following claims:

Count I:      Class Claims Against Investment Adviser Defendants under Section 34(b) of the ICA;

Count II:     Derivative Claims Against Investment Adviser Defendants under Section 36(b) of the ICA;

Count III:    Class and Derivative Claims for Control Person Liability Against Fidelity Investors, Inc. under Section 48(a) of the ICA;

Count IV:     Derivative Claims Against Investment Adviser Defendants under Sections 206 and 215 of the Investment Advisors Act ("IAA");

Count V:      Class Claims Against Investment Adviser Defendants for Breach of Fiduciary Duty;

Count VI:     Class Claims Against Director Defendants for Breach of Fiduciary Duty; and

Count VII:    Class Claims Against Investment Adviser Defendants for Aiding and Abetting a Breach of Fiduciary Duty.

The Class Action Plaintiffs also purport to assert both class claims on behalf of investors in the Fidelity family of mutual funds (the "Fidelity Funds"), and derivative claims on behalf of the Fidelity Funds, against the Fidelity Funds' investment advisers, the Fidelity Funds principal underwriter, the investment advisers' and underwriters' corporate parents, and the Fidelity Fund trustees during class periods beginning July 16, 1999 and ending November 17, 2003.

Although the named plaintiffs in the Class Actions are shareholders in only a handful of funds within the Fidelity Fund complex, the cases purport to bring derivative claims on behalf of the entire universe of 208 Fidelity mutual funds (*Gilliam* Complaint, Caption, ¶ 1 and Exhibit A).

The proposed schedule and pretrial order in the Class Actions in the Class Actions contemplates that a Consolidated Amended Complaint will not be filed until 60 days after "the date of the entry of the latter of Pretrial Order No.1 [consolidating the actions] or Pretrial Order No. 2 [appointing Class Action Counsel as tri-lead and liaison counsel]. Defendants' motion to dismiss will not be ready for argument for another 120 days thereafter.

**C.     The Class Action Plaintiffs Motion to Consolidate and for Appointment of Tri-Lead Counsel and Liaison Counsel.**

On September 1, 2004, without notice to the *Haugen* Plaintiffs, the *Gilliam* Plaintiffs moved to consolidate the *Haugen* Action and the related *Bennett* Action into the Class Actions. The *Gilliam* Plaintiffs simultaneously moved for the appointment of the law firms of Milberg Weiss Bershad & Shulman LLP, Stull, Stull & Brody and Scott + Scott LLC, as tri-lead counsel and Moulton & Gans, as liaison counsel in the proposed consolidated actions.

5

After learning about the foregoing motions, the *Haugen* Plaintiffs filed an opposition to the Class Action Plaintiffs' motions for consolidation and appointment of tri-lead and liaison counsel because (a) material substantive and procedural differences between the lawsuits and (b) factual antagonism between the section 36(b) claims asserted by the *Haugen* Plaintiffs on behalf of Fidelity Magellan Fund and the section 36(b) claims asserted by the Class Action Plaintiffs on behalf more than 200 Fidelity mutual funds, rendered consolidation inappropriate under Fed. R. Civ. P. 42(a).   *See* The *Haugen* Plaintiffs' Memorandum of Law in Opposition to Motions for Appointment of Tri-Lead Counsel and for Consolidation  (*Haugen* Docket No. 34); The *Haugen* Plaintiffs [Proposed] Sur-Reply in Opposition to Motions for Consolidation and Appointment of Tri-Lead and Liaison Counsel (*Haugen* Docket No. 50). The *Bennett* Plaintiffs and all of the Defendants likewise opposed consolidation of the *Haugen* Action and the *Bennett* Action with the Class Actions.

On December 8, 2004, seven months after the *Haugen* Action was filed and five months after the *Haugen* Action was transferred to this Court, the *Gilliam* Plaintiffs moved to intervene in the *Haugen* Action for the sole purpose of moving to stay that action pending a decision on their motion for consolidation.  Class Action Counsel complain that the *Haugen* Plaintiffs have the audacity of promptly trying to move their case forward and accuse the defendants of conspiring with the *Haugen* Plaintiffs to do so.   The *Gilliam* Plaintiffs' motion to intervene and stay the *Haugen* Action in an effort to aid their motions for consolidation and appointment of lead counsel should be denied for the reasons set forth below.

## III. ARGUMENT

**A.    The *Gilliam* Plaintiffs Do Not Meet The Requirements For Intervention As Of Right.**

A party seeking to intervene as of right in a civil action under Fed. R. Civ. P. 24(a)(2) must satisfy four prerequisites: (1) a timely application for intervention; (2) a demonstrated interest relating to the property or transaction that forms the basis of the ongoing action; (3) a satisfactory showing that the disposition of the action threatens to create a practical impairment or impediment to its ability to protect that interest; ***and*** (4) a satisfactory showing that existing parties inadequately represent its interest. *Pub. Serv. Co. of N.H. v. Patch*, 136 F.3d 197, 204 (1st Cir. 1998) (emphasis added).  These four elements are to "be read not discretely, but together," and always in keeping with a commonsense view of the overall litigation." *Id.*  (citation omitted) **The failure to satisfy any one of the prerequisites dooms intervention.**  *Travelers Indemnity Co. v. Dingwell*, 884 F.2d 629, 637 (1st Cir.1989).

> **1.    Because The *Haugen* Plaintiffs' Claims Are Completely Distinct Legally As Well As Factually From *Gilliam* Plaintiffs Claims, *Gilliam* Plaintiffs Cannot Meet The Requirements For Intervention As Of Right.**

At the heart of *Gilliam* Plaintiffs' motions to consolidate and intervene are their continued attempts to shoehorn all of their extremely wide-ranging, inconsistent, divergent and sometimes-conflicting allegations into the *Haugen* and *Bennett* Plaintiffs' cases.  The Court should not be misled by *Gilliam* Plaintiffs' attempts to characterize these cases as "bringing the same claims" or "alleging a common course of conduct by Defendants."  Memorandum of Law in Support of the *Gilliam* Plaintiffs' Motion to Intervene and to Stay All Proceedings ("*Gilliam* Intervention Memo"), pp. 3, 5.  While *Gilliam* Plaintiffs copied some of the factual allegations from the earlier-filed *Haugen* and *Bennett* Complaints regarding economies of scale and

management fees, a careful examination of the *Gilliam* Plaintiffs' complaints reveal that the cases are much more dissimilar than they are alike.

The *Haugen* and *Bennett* Plaintiffs attack principally the way the funds in question have been and are being **managed**. Poor governance leading to excessive fee payments made by **existing shareholders** is the focal point of those cases. In contrast, the *Gilliam* Plaintiffs' claims principally attack the **marketing practices** used in bringing **new investors** into the funds. Cases attacking money management decisions affecting existing shareholders are very different from those attacking sales and marketing practices used to generate new sales. The principal subject matter of the conduct attacked by the *Haugen* and *Bennett* Plaintiffs differs tremendously from that which is the focal point of the attack launched by the *Gilliam* Plaintiffs.

Thus, the *Haugen* and *Bennett* Plaintiffs have brought cases in which the claim itself is that Defendants have been charging excessive management fees based upon improper retention of economies of scale and a comparison between the fees charged to institutional investors and the named mutual funds. An analysis of the counts of the *Gilliam* Plaintiffs' claims, on the other hand, reveals that their cases allege that Defendants named in their Complaint directed undisclosed, unauthorized, and excessive payments to broker-dealers to steer clients to Fidelity Funds while also challenging Defendants' sales and marketing practices. Unlike the *Haugen* and *Bennett* cases, the *Gilliam* Plaintiffs' cases focus on 12b-1 marketing fees, Soft Dollars, and excessive commissions. *See e.g.*, *Gilliam* Complaint Counts I (¶ 99), II (¶ 107), IV (¶ 123), VI (¶ 133), and VII (¶ 139). *Gilliam* Plaintiffs only make an allegation relating to economies of scale in its first Count but even then, the argument relates to "economies of scale achieved by *marketing* of the Fidelity Funds," making no reference whatsoever to the relation of economies of scale to management fees. *Gilliam* Complaint Count I (¶ 99(e)).

A close examination of the *Gilliam* Plaintiffs' Complaints makes it apparent that any recovery sought for management fees was because of the **effect** of the Defendants' alleged unlawful payments to broker-dealers.[2]  In stark contrast, central to the *Haugen* and *Bennett* Plaintiffs' Complaints are the management fees that should have been charged as a direct result of economies of scale.  In their opposition to the *Gilliam* Plaintiffs' motion for consolidation, Defendants recognized the vast differences between the cases, referring to the *Haugen* and *Bennett* cases as the "'Excessive Management Fee' cases" and the *Gilliam* Plaintiffs' cases as the "'Revenue Sharing' cases."  Fidelity Defendants' Memorandum in Opposition to the *Gilliam* Plaintiffs' Motion for Consolidation of Related Cases, pp. 1-2.

As the counts charged in the *Gilliam* cases are completely distinct from the counts charged in the *Haugen* and *Bennett* cases, any disposition in the *Haugen* and *Bennett* cases will not in any way impair or impede *Gilliam* Plaintiffs' ability to protect their interest in the common Fidelity Funds at issue, as required by Rule 24(a)(2).  The failure of *Gilliam* Plaintiffs to establish this factor dooms intervention, *Travelers Indem. Co.*, 884 F.2d at 637, and the Court need not address any of *Gilliam* Plaintiffs' other arguments relating to intervention as of right.[3]  Rather, the Court should deny *Gilliam* Plaintiffs' motion for intervention as yet another attempt to further delay the *Haugen* and *Bennett* cases and allow the *Haugen* Plaintiffs to litigate the case they first filed over seven months ago.

---

[2] To the extent there is some overlap between the cases, the Court could take the less invasive approach of ordering coordinated pretrial discovery.

[3] Accordingly, the Court need not address the *Gilliam* Plaintiffs' spurious allegations that Defendants and the *Haugen* and *Bennett* Plaintiffs are conspiring to move their cases forward to further the illusion of unrelatedness. *Haugen* Plaintiffs are proceeding with their case because it was filed over seven months ago and because it is, in fact, distinct and unrelated to the *Gilliam* Plaintiffs' cases.  Accordingly, at most, discovery might need to be coordinated if the Court found some factual overlap between the cases but discovery certainly would not need to be redone, as baldly asserted by *Gilliam* Plaintiffs.  Any inefficiency is being caused by *Gilliam* Plaintiffs' repeated attempts to hijack and stall the *Haugen* Plaintiffs' case by filing motions to consolidate and intervene and not by the *Haugen* Plaintiffs efforts to move their case forward.

The *Gilliam* Plaintiffs apparently hope to convince the Court that they should be allowed to intervene by repeatedly stating that they collectively own thirty-two Fidelity Funds (including the five owned by *Haugen* and *Bennett* Plaintiffs) and are seeking to recover on behalf of all 208 funds. This does not save the day for *Gilliam* Plaintiffs. Their misguided contention has the opposite effect, for it further accentuates the differences between the two cases and the fact that the claims are dissimilar. This disparity accounts for the very different approaches as to which funds are included in the respective suits. Most importantly, it underscores: (1) the additional collateral issues of excessive payments to broker-dealers and Defendants' sales and marketing practices that the *Gilliam* Plaintiffs are trying to inject into the *Haugen* and *Bennett* Plaintiffs' cases even though they are not relevant or applicable to the *Haugen* and *Bennett* Plaintiffs' claims; and (2) the factual conflicts between and among the funds that the *Gilliam* Plaintiffs purport to represent. *See* The *Haugen* Plaintiffs' [Proposed] Sur-Reply In Opposition To Motions For Appointment of Tri-Lead Counsel And For Consolidation (*Haugen* Docket No. 50).

The rule allowing intervention was "not intended to allow for the creation of whole new suits by intervenors." *Wash. Elec. Coop., Inc. v. Mass. Mun. Wholesale Elec. Co.*, 922 F.2d 92, 97 (2d Cir. 1990). The courts retain discretion to determine when intervention is appropriate, even when the motion to intervene is brought under Rule 24(a)(2). *Int'l Paper Co. v. The Inhabitants of the Town of Jay, Me.*, 887 F.2d 338, 343-344 (1st Cir. 1989) (adopting abuse of discretion standard for review of denial of intervention under Rule 24(a)(2) and view that the determination of "whether disposition of [an] action will impede or impair [an] applicant's ability to protect his interest "should be analyzed" in practical terms rather than in legal terms)" (citing 7C Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice & Procedure § 1908 at 301 (2d ed. 1986)); *Oneida Indian Nation of Wis. v. N.Y.*, 102 F.R.D. 445, 449 (N.D.N.Y.1983) (intervention denied where it "may promote judicial economy by resolving

related issues in one lawsuit, but at the expense of rendering the single lawsuit more complex and protracted, perhaps to the point of unmanageability") ("*Oneida I*"), *rev'd on other grounds*, 732 F.2d 261 (2d Cir. 1984).  *See also Wash. Elec. Coop.,* 922 F.2d at 97 (citing *Oneida I*).

In *Oneida I*, the court decided that "[t]he introduction of the movants' claims and the inevitable incorporation into this suit of new and extensive areas of disputed law and fact promises to render this lawsuit intolerably complex and possibly interminable.  Rule 24(a)(2) cannot…warrant such result."  102 F.R.D. at 449.  Granting intervention in this case would have a similar result.  As discussed below (as well as in the responses to the *Gilliam* Plaintiffs' motions to consolidate and for appointment of tri-lead and liaison counsel), the *Gilliam* Plaintiffs' proposal is certain to unnecessarily complicate the *Haugen* case with extraneous issues such as standing, class certification, and differing damage periods.

Because the *Gilliam* Plaintiffs have failed to demonstrate interest relating to the property or transaction that forms the basis of the *Haugen* Action ongoing action and failed to make a satisfactory showing that the disposition of the *Haugen* Action threatens to create a practical impairment or impediment to its ability to protect that interest, in keeping with a commonsense view of the overall litigation, *Public Service Co. of New Hampshire*, 136 F.3d at 204, this Court should deny *Gilliam* Plaintiffs' motion to intervene for this reason alone.

**2.     The *Gilliam* Plaintiffs Have Made No Showing that the *Haugen* Plaintiffs Will Inadequately Protect *Gilliam* Plaintiffs' Interests.**

Equally fatal to the *Gilliam* Plaintiffs' motion to intervene is their failure to demonstrate that the *Haugen* Plaintiffs are inadequately representing their interests in seeking to recover excessive fees charged to the Fidelity Magellan Fund and the Fidelity Contrafund, the two funds at issue in the *Haugen* Action.   "Where an existing party adequately represents the interest asserted by the intervenor, there is no right to intervention."  *Smoot v. Mobil Oil Corp.,* 722 F.

Supp. 849, 860 (D. Mass. 1989) (citing *Morgan v. McDonough,* 726 F.2d 11, 14 (1st Cir. 1984); *Meridian Homes Corp v. Nicholas W. Prassas & Co.,* 683 F.2d 201, 205 (7th Cir. 1982)). Inadequacy may be shown in the cases of collusion with an opposing party, adverse interest to the proposed intervenor, or failure to fulfill duty of representation. *Morgan,* 726 F.2d 11 at 14 (citations omitted). Further, the burden is on the intervening party to prove inadequate representation. *Ruthardt v. United States,* 303 F.3d 375, 386 (1st Cir. 2002).

The *Gilliam* Plaintiffs have made no showing that *Haugen* Plaintiffs and their counsel are in any way inadequate. On the contrary, they complain that the *Haugen* Plaintiffs and their counsel have been too aggressive in seeking a prompt resolution of their claims, which is clearly in the interest of the *Gilliam* Plaintiffs, although not in the interests of their counsel, who are seeking to take control over the *Haugen* case. The *Gilliam* Plaintiffs also have made no showing that the interest of the *Haugen* Plaintiffs in seeing management fees recouped and reduced for Magellan and Contrafund is unaligned or at odds with the *Gilliam* Plaintiffs' interest. Moreover, despite their unsupported rhetoric and conspiracy theories, the *Gilliam* Plaintiffs have made no showing of collusion with an opposing party. Indeed, they cannot provide any coherent explanation about why the Defendants would oppose consolidation and choose to fight separate lawsuits, other than their stated explanation that the cases, at their core, are fundamentally different. The *Gilliam* Plaintiffs failure to offer any evidence that their interests are being inadequately protected dooms both their motion to intervene as of right under Fed. R. Civ. P. 24(a)(2), as well as their motion for permissive intervention under Fed. R. Civ. P. 24(b)(2).

**B.     The *Gilliam* Plaintiffs Also Fail To Meet The Requirements For Permissive Intervention As The Claims In The Cases Do *Not* Involve Common Issues Of Law Or Fact And Intervention Would Unduly Delay Or Prejudice The Adjudication Of The Rights Of The *Haugen* And *Bennett* Plaintiffs.**

A court *may in its discretion* permit a party to intervene in an action "when an applicant's claim or defense and the main action have a question of law or fact in common".  Fed. R. Civ. P. 24(b)(2).  In exercising its discretion, however, "the court *shall* consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties."  Fed. R. Civ. P. 24(b) (emphasis added).  The standard for permissive intervention is set forth in *In re Thompson*, 965 F.2d 1136, 1142 n.10 (1st Cir. 1992):  "[P]ermissive intervention is allowable under Fed. R. Civ. P. 24(b) if it is determined that (1) 'the applicant's claim or defense and the main action have a question of law or fact in common,' (2) the applicant's interests are not adequately represented by an existing party, *and* (3) intervention would not result in undue delay or prejudice to the original parties".

As discussed in the previous section, the *Gilliam* Plaintiffs cannot satisfy the first *Thompson* factor, because the *Gilliam* Plaintiffs' cases are largely distinct from the *Haugen* Action.  Also discussed in the previous section,  the second *Thompson* factor, inadequacy of representation has not been proven here.

It goes without saying that the *Gilliam* Plaintiffs cannot satisfy the third *Thompson* factor, where as here the *Gilliam* Plaintiffs are moving to stay the *Haugen* Action.  Under the third *Thompson* factor, intervention also would delay and prejudice the *Haugen* Plaintiffs by involving them in disputes they otherwise would not be drawn into such as:[4]

- **Standing**: *Haugen* Plaintiffs own shares in all the funds on behalf of which they have brought suit while *Gilliam* Plaintiffs are attempting to bring suit on behalf of 208 funds when they only own shares in thirty-two of those funds;

---

[4] The reasons are discussed in fuller detail in the responses to *Gilliam* Plaintiffs' motions for consolidation and appointment of tri-lead and liaison counsel (Docket  Nos. 34 and 50). .

- **Class certification**: the *Haugen* Action is a statutory derivative action, requiring no class action practice, while the *Gilliam* Plaintiffs' cases are brought on behalf of a potentially enormous class of present and former investors;

- **Motions to dismiss:** Defendants have answered the *Haugen* Complaint but have not answered the *Gilliam* Complaints and can be expected to move to dismiss; and

- **Extended case management**: under *Gilliam* Plaintiff's proposed order setting a schedule after consolidation, an additional six months (at a minimum) would lapse before the cases could proceed in a substantive manner -- longer depending on how quickly class issues could be resolved -- where the *Haugen* case is at a stage where it could proceed with discovery immediately.

In addition, allowing *Gilliam* Plaintiffs to intervene would further complicate an already complex case as they would seek to interject their claims into the *Haugen* Plaintiffs' cases, causing possible confusion regarding the different:

- **Statutes of limitations**: there is, at most, only a six month overlap between the damage periods of the *Haugen* and *Gilliam* cases;

- **Types of cases**: the *Haugen* case is strictly a statutory derivative action where the *Gilliam* Plaintiffs' cases allege claims both on behalf of a class of investors as well as derivatively on behalf of the Fidelity funds;

- **Factfinders**: *Gilliam* Plaintiffs have demanded a jury trial while the *Haugen* actions will be tried by a judge; and

- **Discovery**: the *Gilliam* Plaintiffs' laundry list of wrongdoings against 208 funds and nineteen named trustees (along with John Does 1-100), among others, will require endless discovery, irrelevant to the particular claims in the *Haugen* case.

Even in cases where there is strong commonality of fact or law (which is not the case here), courts have denied permissive intervention when it would cause undue delay, complexity or confusion in a case. In this case, the near certainty of increased delay, complexity, and confusion warrants the denial of *Gilliam* Plaintiffs' request to intervene. *See SEC v. Everest Mgmt. Corp.*, 475 F.2d 1236, 1240 (2d Cir. 1972) ("the complicating effect of the additional issues and the additional parties outweighs any advantage of a single disposition of the common issues"); *Stadin v. Union Elec. Co.*, 309 F.2d 912, 920 (8th Cir. 1962) (noting the "added

14

complexity; … additional witnesses, interrogatories and depositions; expanded pretrial activity; greater length of trial; and elements of confusion" that can result from intervention).

**C.    The Court Should Reject The *Gilliam* Plaintiffs' Motion For A Stay As Yet Another Attempt To Delay and Take Control Over the *Haugen* Action.**

The Court can take guidance from the standards applicable to a party seeking a stay execution orders or pending appeals: "(1) a strong showing that he is likely to succeed on the merits; (2) a showing that unless a stay is granted, he will suffer irreparable injury; (3) a showing that no substantial harm will come to other interested parties; *and* (4) a showing that a stay will do no harm to the public interest". *See Ainswoth Aristocrat Int'l Pty. Ltd. v. Tourism Co. of P.R.*, 818 F.2d 1034, 1039 (1st Cir. 1987); *Martinez Rodriguez v. Jiminez*, 537 F.2d 1, 2 (1st Cir. 1976).

First, *Haugen* Plaintiffs believe that the reasons stated in this motion and the parties' responses to the *Gilliam* Plaintiffs' motions to consolidate and for appointment of tri-lead and liaison counsel demonstrate that the *Gilliam* Plaintiffs are not likely to succeed on the merits of their motions to consolidate and for appointment of lead counsel.   Second, if the *Gilliam* Plaintiffs are correct that they will soon have a decision on their consolidation motion, *Gilliam* Intervention Memo, p. 8, they will not suffer any irreparable injury as the *Haugen* Plaintiffs are in the initial stages of their cases (and coordination of discovery is a possibility).   As to the third and fourth factors, the *Haugen* case has been pending now for over seven months and should be allowed to proceed, unhindered by the unrelated, collateral issues raised in a completely separate, later-filed class actions by the *Gilliam* Plaintiffs.   The defendants have answered the *Haugen* Plaintiffs' complaint and the parties are ready to proceed.   The *Haugen* Plaintiffs are doing what the Massachusetts Rules of Professional Conduct require them to do: act promptly and diligently while zealously representing the client.   Rule 1.3.   Indeed, "no professional shortcoming is more

15

widely resented than procrastination."  Comment to Rule 1.3.  Yet, this is exactly what *Gilliam* Plaintiffs' seek – delay upon delay.  It would be unfair to further delay the *Haugen* Plaintiffs from proceeding with their case in order to give the *Gilliam* Plaintiffs more time to attempt to hijack the *Haugen* case.  The *Gilliam* Plaintiffs have filed their motion for consolidation, and if it is granted (the *Haugen* Plaintiffs strongly oppose consolidation of their case with the *Gilliam* cases) the worst that would happen is that the *Gilliam* Plaintiffs would have the benefits of the discovery done by the *Haugen* Plaintiffs—something the *Gilliam* Plaintiffs appear reluctant to do.

"Where there is a 'likelihood of substantial overlap' between two lawsuits pending in two federal courts, 'a stay of the second filed action' may be 'appropriate in order to permit the court of the first filing to rule on the motion to transfer'."  *Veryfine Prods., Inc. v. Phlo Corp.*, 124 F. Supp. 2d 16, 26 (D. Mass. 2000) (citing *Boston* , & *Me. Corp. v. United Transp. Union*, 110 F.R.D. 322, 330 (D. Mass. 1986) (Wolf, J.)).   Here, the *Haugen* Action and the related *Bennett* Action were first filed and have very little overlap with the second filed cases, those filed by *Gilliam* and the other Class Action Plaintiffs.  Yet, counsel for the second filed cases stand the holding of *Veryfine* on its head by seeking to stay the **first filed** *Haugen* and *Bennett* actions.  In circumstances similar to this case, Chief Judge Young, in *Veryfine*, denied the motion to stay the first filed action pending a resolution of a motion to, *inter alia*, transfer in the second filed action

for the very reason that "[i]t is the court of the *first* filed action."[5]  *Veryfine Prods., Inc.*, 124 F.

Supp. 2d at 26.

## IV.  CONCLUSION

The *Gilliam* Plaintiffs fail to demonstrate grounds to intervene in the *Haugen* Action or

for a stay in the first filed *Haugen* case.    The *Gilliam* Plaintiffs' motions to intervene and stay

the *Haugen* cases are yet another dilatory tactic to conflate cases that are completely distinct,

causing unnecessary delay in those cases.  However, justice delayed is justice denied.  *Martel v.*

*County of Los Angeles*, 56 F.3d 993, 1003 (9th Cir. 1995) (en banc) (Reinhardt, J., dissenting)

("Roscoe Pound said 'justice delayed is justice denied' . . . .").

Here, the *Haugen* Plaintiffs have attacked with rifle-shot precision defendants' excessive

fee charges and are poised to proceed with those claims unfettered by extraneous allegations and

discovery needs that burden the *Gilliam* Plaintiffs.  Allowing the *Haugen* plaintiffs to proceed

with their streamlined fee cases can only benefit the *Gilliam* Plaintiffs who will remain free to

extract whatever value exists in the various claims asserted in their cases other than the fee

claims.   In contrast, allowing intervention will only slow the *Haugen* Plaintiffs' case without

protecting the *Gilliam* Plaintiffs interests in the least.  The only beneficiary, if intervention were

allowed, would be the *Gilliam* Plaintiffs' counsel, who are attempting to collect another case

from which they may seek to extract fees.

---

[5] *Gilliam* Plaintiffs' cases are inapposite.  In *M.A.S. Realty Corp. v. Travelers Casualty & Surety Co.,* 196 F. Supp. 2d 41, 43 (D. Mass. 2002), both parties had demanded a reference proceeding, a required procedure under Massachusetts law.  No such comparable situation exists here.  *Baggesen v. American Skandia Life Assurance Corp.*, 235 F. Supp. 2d 30, 32 (D. Mass. 2002) involved a mandatory arbitration clause which limits a court's inquiry into an application for a stay pending arbitration.  Central to the analysis in *Goldhammer v. Dunkin' Donuts*, 59 F. Supp. 2d 248 (D. Mass. 1999), was pending litigation in a foreign court and the considerations attendant with international law concerns, a situation not present in this case.  Finally, while *Hertz Corp. v. Gator Corp.*, 250 F. Supp. 2d 421, (D.N.J. 2003) involves a MDL panel consolidation, for the reasons already repeated in several pleadings in these cases, *Gilliam* Plaintiffs are unlikely to succeed on their motion for consolidation, and given the distinct claims in these cases, allowing the *Haugen* and *Bennett* cases to proceed without the *Gilliam* Plaintiffs will not in any way prejudice them.

Accordingly, the *Gilliam* Plaintiffs' motion to intervene and stay the *Haugen* Action should be denied.

Dated: December 22, 2004

Respectfully submitted,

SHAPIRO HABER & URMY LLP

By:  __/s/ Michelle H. Blauner_____
     Michelle H. Blauner, BBO # 549049
     53 State Street
     Boston, MA  02109
     (617) 439-3939

     Lynn Lincoln Sarko (*pro hac vice*)
     Michael D. Woerner (*pro hac vice*)
     Gretchen F. Cappio (*pro hac vice*)
     KELLER ROHRBACK L.L.P.
     1201 Third Avenue, Ste. 3200
     Seattle, WA  98101-3052
     (206) 623-1900

     Gary Gotto
     Ron Kilgard
     KELLER ROHRBACK P.L.C.
     National Bank Plaza
     3101 North Central Avenue, Ste. 900
     Phoenix, AZ  85012
     (602) 248-0088

     Michael J. Brickman (*pro hac vice*)
     James C. Bradley (*pro hac vice*)
     Nina H. Fields (*pro hac vice*)
     RICHARDSON, PATRICK, WESTBROOK &
     BRICKMAN, LLC
     174 East Bay Street
     Charleston, SC  29401
     (842) 727-6500

     Guy M. Burns
     Jonathan S. Coleman
     Becky Ferrell-Anton
     JOHNSON, POPE, BOKOR, RUPPEL &
     BURNS, L.L.P.
     100 North Tampa Street, Ste. 1800
     Tampa, FL  33602
     (813) 225-2500

Counsel for the *Haugen* and *Bennett* Plaintiffs

18